AFFIRM; Opinion issued December 5, 2012.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-11-00583-CV

### SUNSHINE JESPERSEN, Appellant

### V.

### SWEETWATER RANCH APARTMENTS AND CNC INVESTMENTS, LTD, LLP, Appellees

**On Appeal from the 14th Judicial District Court
Dallas County, Texas
Trial Court Cause No. 09-02799-A**

# OPINION

Before Justices Moseley, Fillmore, and Myers
Opinion By Justice Fillmore

Sunshine Jespersen appeals the trial court's judgment in favor of Sweetwater Ranch Apartments and CNC Investments, Ltd, LLP (collectively appellees). In seven issues, Jespersen contends the trial court erred by (1) granting summary judgment in favor of appellees on Jespersen's claims based on pregnancy and disability discrimination, violation of section 92.0081 of the property code, and breach of contract, and on appellees' counterclaim for breach of contract; (2) awarding appellees attorney's fees; and (3) awarding appellees court costs related to the taking of videotaped depositions and obtaining copies of depositions. We affirm the trial court's judgment.

## Background

On February 29, 2008, Jespersen was hired to work as a leasing agent for CNC, a property management company that provided on-site management and staff to Sweetwater Ranch, an apartment complex. In March 2008, Jespersen signed a lease for an apartment at Sweetwater Ranch and received a discount on the rent because she was employed by CNC.

There were positions at Sweetwater Ranch for a property manager, an assistant manager, and two leasing agents. In 2008, CNC was having difficulty filling the positions. According to Jespersen, when she started work, she was the only full time employee in the office at Sweetwater Ranch and was required to work overtime "all the time." Employees from other properties assisted at Sweetwater Ranch. One of these employees, Sarah McMillan, worked as the acting manager at Sweetwater Ranch between March 2008 and July 2008. McMillan was pregnant at the time. McMillan confirmed Sweetwater Ranch was short-staffed and that she worked every day.

Shortly after Jespersen started working at Sweetwater Ranch, she learned she was pregnant with twins. On April 14, 2008, Jespersen saw Dr. Asuncion Acosta for an upper respiratory infection. Dr. Acosta provided a note stating Jespersen needed "at least 2 days off within 7 days period." After receiving Dr. Acosta's note, CNC provided Jespersen with two days off during every seven-day period.

On May 15, 2008, Jespersen saw Dr. Kimberly Chesshir, an obstetrician. At some point after the visit, Jespersen requested to work twenty hours per week. Jespersen admitted she did not have a note from Dr. Chesshir restricting her work schedule to twenty hours per week, but stated Chesshir prescribed limited activity during the office visit. According to Jespersen, she informed Pam Lindsey, CNC's regional supervisor, of Dr. Chesshir's orders, and Lindsey responded that she needed two full-time employees. Lindsey, however, recalled Jespersen saying "it was too much, too

stressful for her, she couldn't do it and that she was quitting" and that Jespersen left "right then." On May 23, 2008, Lindsey completed a Personnel Change Form that stated Jespersen quit without notice and was not eligible to be rehired.

Jespersen subsequently requested three weeks of medical leave. Lynda Goldstein, CNC's human resources director, testified that Jespersen had not been employed a sufficient period of time to be eligible for sick leave or for leave under the Family Medical Leave Act (FMLA). CNC, therefore, treated Jespersen as resigning because she was required to take medical leave. According to Goldstein, this designation allowed Jespersen to be eligible to be rehired.

Tobi Beck began working as the assistant manager at Sweetwater Ranch on May 27, 2008 and resigned in October 2008 due to stress from working sixty to eighty hours per week. Beck testified it would have been helpful to have somebody working twenty hours per week to answer the phones. At Lindsey's direction, Beck sent Jespersen a letter on May 29, 2008 stating that, effective June 1st, Jespersen's rent would be $956 per month "due to the fact of employment separation with CNC" and that there was balance due of $225.00 for a security deposit. On June 17, 2008, Sweetwater Ranch sent Jespersen a notice that she still owed $221 for June's rent.

On June 19, 2008, Jespersen sent an email to Darla Miles, CNC's regional vice-president, about the June 17th notice. In the email, Jespersen indicated she had been told "two weeks ago" by her doctor that she could return to work if she did not work "a lot of overtime," but Lindsey would not allow Jespersen to return to work. Jespersen told Miles that Beck said she was working by herself and no one had been hired for Jespersen's position. Miles asked Jespersen to obtain a doctor's note for a full release to return to work without restrictions. Pursuant to CNC's policies, any employee returning from medical leave of more than two days was required to provide a note from the employee's doctor.

When she was hired, Jespersen received a job description for the leasing agent position that stated the physical demands of the job included "constant" walking. Goldstein prepared the job description in either 2006 or 2007 based on an existing job description, her knowledge from working for a property management company, and conversations about the leasing agent job with ten or fifteen employees of CNC, including its regional supervisors and vice-presidents. She also received input on the job description from individuals belonging to a human resources association comprised of "property management people."

Jespersen, however, testified that she was not required to walk constantly in her job at Sweetwater Ranch. McMillan also testified that leasing agents were not constantly walking. According to Kimberly Kennedy, Sweetwater Ranch's property manager in February 2008, a leasing agent walked several hours during the day, but did not walk eight hours per day. Beck testified that a leasing agent's main job was to walk prospective tenants around the property, but a leasing agent was not required to walk constantly. Beck also testified, however, that the amount of walking required of a leasing agent varied on a daily basis. Some days were spent entirely in the office; some days, the leasing agent spent "every minute" showing apartments, was walking constantly, and climbed a lot of stairs.

On June 26, 2008, Jespersen obtained a note from Dr. Chesshir stating that she could return to work forty hours per week, was not restricted, and could do "some walking." According to Goldstein, the job description for a leasing agent required constant walking and, with restrictions on her ability to walk, Jespersen could not do long periods of walking that might be required on any particular day. Jespersen also could not do marketing, inspection, and comparison of other properties. Miles testified a leasing agent could perform the job doing some walking, but admitted that, if Sweetwater Ranch was not fully staffed, a leasing agent would be required to do more

-4-

walking. According to Goldstein, she and Miles agreed that, based on the job description, property needs, and staffing issues, Sweetwater Ranch also needed leasing agents who were available to work overtime. Goldstein and Miles discussed the situation and did not believe that Jespersen had been released to work within the job requirements. CNC did not reinstate Jespersen because she was unable to provide a full release from her doctor.

At some point, Jespersen called Miles and asked if, because Jespersen's position had been filled, she had been terminated. Miles responded that Jespersen was terminated when her doctor said she could not work and Jespersen left the Sweetwater Ranch office. Jespersen indicated her doctor had said she could work only twenty hours per week and Lindsey said she needed two full-time leasing agents. Jespersen then asked what the "paperwork" stated about the reason for her termination. Miles stated she had not seen the paperwork.

Jespersen then spoke to Goldstein and asked if her position had been filled. Goldstein responded that someone had been hired. Jespersen asked if that meant she had been terminated. Goldstein responded that Jespersen had resigned for medical reasons and was eligible to be rehired. Jespersen denied that she had resigned. Goldstein stated that Jesperson had to take medical leave, and CNC considered an employee on medical leave who was not covered by FMLA to have resigned. Jespersen said she did not have to take leave because she was available to work twenty hours a week. Goldstein stated they did not have any part-time positions available.

On July 9, 2008, Jespersen sent an email to Sweetwater Ranch giving notice that she would vacate her apartment on August 9th. On July 11, 2008, Beck saw Jespersen moving her belongings out of the apartment. On July 16, 2008, Beck received notice that Jespersen's check for the July rent had been returned due to insufficient funds. Pamela White, the manager of Sweetwater Ranch in July 2008, and Beck then went into Jespersen's apartment to confirm she had moved out of the

apartment. There was trash, but no furniture, in the apartment and there was some damage to the apartment that needed to be repaired. Beck posted a notice inside the front door of the apartment stating Sweetwater Ranch considered the apartment to be abandoned. Jespersen did not respond to the notice. Beck also assessed charges for cleaning and repairing the apartment. On July 24, 2008, Jespersen brought her cable box to Sweetwater Ranch's office. According to Jespersen, she planned to clean the apartment that day, but Beck said she could not return to the apartment. At Lindsey's instruction, Beck then had the locks to the apartment changed.

Jespersen filed this suit alleging appellees had breached the lease by locking her out of the apartment and overcharging her for certain fees.[1] Jespersen subsequently amended her petition to allege additional claims for pregnancy and disability discrimination and for violation of section 92.0081 of the property code. Jespersen filed a no-evidence motion for summary judgment on appellees' counterclaim for breach of contract on grounds appellees had no evidence it tendered performance, that Jespersen breached the contract, or that appellees suffered any damages.[2] Appellees filed a combined traditional and no-evidence motion for summary judgment on Jespersen's claims. As to Jespersen's pregnancy and disability discrimination claims, appellees moved for summary judgment on grounds (1) Jespersen had no evidence she was qualified for the leasing agent position or that appellees treated any non-pregnant or non-disabled employees more favorably, (2) Jespersen had no evidence she was disabled or that appellees regarded her as disabled and the summary judgment evidence conclusively established appellees did not regard Jespersen as

---

[1] On October 23, 2008, Jespersen filed a complaint with the Texas Workforce Commission complaining of sex and disability discrimination. On July 6, 2009, the TWC dismissed the complaint because it was unable to conclude the information obtained established any statutory violation. The TWC notified Jespersen that she a had a right to file a civil action based on the allegations.

[2] Jespersen also moved for summary judgment on grounds appellees had no evidence to support nineteen affirmative defenses. We will address these affirmative defenses only if necessary to the resolution of an issue on appeal.

disabled; and (3) Jespersen had no evidence to rebut appellees' legitimate, non-discriminatory reasons for its employment actions. Appellees sought summary judgment on Jespersen's claim for violation of section 92.0081 of the property code on grounds (1) Jespersen had no evidence she was locked-out of the apartment or was not provided proper notice under the statute, and (2) the summary judgment evidence established Jespersen abandoned the apartment. Finally, appellees moved for summary judgment on its counterclaim for breach of contract and on Jespersen's claim for breach of contract on grounds the evidence established as a matter of law that Jespersen breached the lease and appellees did not breach the lease.

Jespersen filed a traditional motion for summary judgment on her pregnancy discrimination, breach of contract, and violation of the property code claims and on appellees' counterclaim for breach of contract. As to her pregnancy discrimination claim, Jespersen argued the evidence established as a matter of law that she was terminated because of conditions related to her pregnancy. She also contended she was entitled to summary judgment on her claim for breach of contract and appellees' counterclaim for breach of contract because the evidence established she fully performed under the agreement and that appellees breached the lease agreement by locking her out of her apartment. Finally, she asserted her claim for a violation of the property code was established as a matter of law because appellees changed the locks on her apartment and did not post the notice required by section 92.0081.

The trial court granted appellees' motion for summary judgment, dismissed Jespersen's claims, and found that Jespersen was liable to appellees for breach of contract. The trial court ordered that "[a]ttorneys' fees and damages associated with [Jespersen's] breach of contract shall be assessed at a hearing to be set by the Court." Appellees filed a request for assessment of damages, attorney's fees, and costs, relying on evidence attached to the request and to appellees' motion for

–7–

summary judgment. Jespersen filed a response to appellee's request, but offered no additional evidence. After a hearing, the trial court awarded appellees $3,421.38 as damages for Jespersen's breach of contract, $21,023.03 for attorney's fees, and $8,029.45 for costs.

## Summary Judgment

In her first five issues, Jespersen argues the trial court erred by granting summary judgment on Jespersen's claims based on pregnancy and disability discrimination, violation of section 92.0081 of the property code, and breach of contract, and on appellees' counterclaim for breach of contract.

### Standard of Review

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). The standards of review for traditional and no-evidence summary judgments are well known. *See Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). With respect to a traditional motion for summary judgment, the movant has the burden to demonstrate that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548–49. We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *Gish*, 286 S.W.3d at 310; *see also* TEX. R. CIV. P. 166a(i). To defeat a no-evidence summary judgment, the nonmovant is required to produce evidence that raises a genuine issue of material fact on each challenged element of its claim. *Gish*, 286 S.W.3d at 310; *see also* TEX. R. CIV. P. 166a(i).

In reviewing both a traditional and a no-evidence summary judgment, we review the evidence in the light most favorable to the nonmovant. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant

unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Gish*, 286 S.W.3d at 310.

When both sides move for summary judgment on the same issues and the trial court grants one motion and denies the other, we consider all the summary judgment evidence and determine all issues presented. *Fielding*, 289 S.W.3d at 848, *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). If the trial court erred, we render the judgment it should have rendered. *Dorsett*, 164 S.W.3d at 661. When a trial court's order granting summary judgment does not specify the grounds relied upon, we must affirm the summary judgment if any of the summary judgment grounds are meritorious. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004); *AKB Hendrick, LP v. Musgrave Enters., Inc.*, 380 S.W.3d 221, 230–31 (Tex. App.—Dallas 2012, no pet.).

### Discrimination Claims

In her first two issues, Jespersen contends the trial court erred by granting summary judgment on her claims for pregnancy and disability discrimination because she presented a prima facie case of discrimination, presented more than a scintilla of evidence on every challenged element, and genuine issues of material fact preclude summary judgment. Jespersen brought her claims for pregnancy and disability discrimination under the Texas Commission on Human Rights Act (TCHRA). *See* TEX. LAB. CODE ANN. §§ 21.001–.556 (West 2006 & Supp. 2012). The TCHRA "is a comprehensive fair employment practices act and remedial scheme, modeled after Title VII of the federal Civil Rights Act of 1964 (Title VII), that provides the framework for employment discrimination claims in Texas." *Prairie View A&M Univ. v. Chatha*, No. 10-0353, 2012 WL 3800321, at *1 (Tex. Aug. 31, 2012). "The TCHRA was 'enacted to address the specific evil of discrimination and retaliation in the workplace,' as well as to coordinate and conform with federal anti-discrimination and retaliation laws under Title VII." *Id.* at *2 (citing *City of Waco v. Lopez*, 259

S.W.3d 147, 153–55 (Tex. 2008)). The purposes of the TCHRA include providing for the execution of the policies of Title VII and its subsequent amendments and of Title I of the Americans with Disabilities Act of 1990 and its subsequent amendments. TEX. LAB. CODE ANN. § 21.001(1), (3) (West 2006). Although we consider the TCHRA's plain language and state precedent in interpreting the statute, we also look to federal law for guidance in situations where the TCHRA and Title VII contain analogous statutory language. *Chatha*, 2012 WL 3800321, at *2 (citing *Specialty Retailers, Inc. v. De Moranville*, 933 S.W.2d 490, 492 (Tex. 1996) (per curiam)).

> Under the TCHRA,
>
> An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin or age the employer:
>
> (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or
>
> (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.

TEX. LAB. CODE ANN. § 21.051 (West 2006). Discrimination on the basis of sex includes pregnancy. *Id.* § 21.106(a). The employee may establish discrimination by either direct evidence of what the employer said or did or by circumstantial evidence of discrimination. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633, 638 (Tex. 2012); *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476–77 (Tex. 2001).

### Direct Evidence of Discrimination

In an employment discrimination case, if the employee produces direct evidence that discriminatory animus played a role in the decision at issue, the burden of persuasion shifts to the employer, who must prove that it would have taken the same action regardless of discriminatory

-10-

animus. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 252–53 (1989); *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002). Jespersen argues she presented direct evidence of discrimination through evidence appellees knew she was not working because she was pregnant and that she was not allowed to return to work because Dr. Chesshir's note allowed only "some walking."

Direct evidence of discrimination is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption. *Sandstad*, 309 F.3d at 897. If an inference is required for the evidence to be probative as to the employer's discriminatory animus in making the employment decision, the evidence is circumstantial, not direct. *Id.* at 897–98. Statements that courts have found to be direct evidence of discrimination have tended to be insults or slurs against the protected group. *See Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994); *Martin v. Bayland Inc.*, 403 F.Supp.2d 578, 582 (S.D. Tex. 2005), *aff'd*, 181 Fed. Appx. 422 (5th Cir. 2006) (per curiam).

Jespersen produced no evidence that was told she would not be reinstated because she was pregnant or that anybody associated with appellees made negative comments about her pregnancy. The evidence relied upon by Jespersen requires an inference or presumption that she was not reinstated because she was pregnant or disabled and, therefore, is circumstantial evidence. *See Appel v. Inspire Pharms., Inc.*, 428 Fed. Appx. 279, 282 (5th Cir. 2011) (evidence that employee was terminated because she could not perform her job duties owing to medical complications that were result of pregnancy was not direct evidence of discrimination).

### Circumstantial Evidence

In the absence of direct evidence of discrimination, the employee must make out a prima facie case of discrimination under the *McDonnell-Douglas* burden shifting analysis. *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43 (2000); *Michael v. City of Dallas*, 314 S.W.3d 687, 690–91 (Tex. App.—Dallas 2010, no pet.) (applying *McDonnell-Douglas* analysis to disability discrimination claim under TCHRA); *Janssen Pharms., Inc. v. Martinez*, 296 S.W.3d 634, 641 (Tex. App.—El Paso 2009, no pet.) (applying *McDonnell-Douglas* analysis to pregnancy discrimination claim under TCHRA). Under this analysis, the employee is entitled to a presumption of discrimination if she meets the "minimal" initial burden of establishing a prima facie case of discrimination. *Garcia*, 372 S.W.3d at 634. To establish a prima facie case of discrimination, the employee must show she (1) is a member of a protected class; (2) was qualified for her position; (3) suffered an adverse employment action; and (4) was replaced by someone outside of her protected class or others similarly situated were treated more favorably (disparate treatment cases). *Reeves*, 530 U.S. at 142; *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam); *Michael*, 314 S.W.3d at 690–91. Once the employee makes this showing, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Reeves*, 530 U.S. at 142; *Toennies*, 47 S.W.3d at 477. If the employer meets this burden, the employee must raise a genuine issue of material fact that the stated reason was a pretext for discrimination. *Reeves*, 530 U.S. at 142–43; *Toennies*, 47 S.W.3d at 477.

There was no evidence identifying the person who replaced Jespersen on a permanent basis as the leasing agent at Sweetwater Ranch. Jespersen argues she was replaced on a temporary basis by Beck, who was not pregnant, while appellees argue Jespersen was replaced by McMillan, who was pregnant. Although neither McMillan, the acting property manager, nor Beck, the assistant manager, were hired as a leasing agent, there was evidence they both performed some of the functions of a leasing agent after Jespersen stopped working at Sweetwater Ranch. Therefore,

Jespersen failed to produce any evidence that she was replaced by someone outside the protected class. Further, Jespersen produced no evidence that appellees did not require the person who replaced her to have the ability to walk constantly and to work overtime. Because Jespersen failed to produce any evidence that she was replaced by someone outside of her protected class or others similarly situated were treated more favorably, she failed to establish a prima facie case of discrimination.

Further, even if Jespersen had successfully established a prima facie case of discrimination, appellees articulated legitimate, nondiscriminatory reasons for refusing to reinstate Jespersen's employment, *i.e.*, Jespersen was not reinstated to the leasing agent job because she could not perform the duties of the job due to medical reasons and the job had been offered to another applicant. *See Davis*, 14 F.3d at 1087–88 (plaintiff's physical inability to perform job was legitimate reason for not hiring plaintiff). Jespersen offered no evidence that these reasons were a pretext for discrimination.

To raise a fact issue on the pretext element of a discrimination claim, the employee must present evidence proving the reasons stated by the employer were not its true reasons, but were a pretext for discrimination, or the reasons were not credible. *Reeves*, 530 U.S. at 143; *Chandler v. CSC Applied Technologies, LLC*, 376 S.W.3d 802, 814 (Tex. App.—Houston [1st Dist.] 2012, pet. filed) (quoting *Elgaghil v. Tarrant Cnty. Junior Coll.*, 45 S.W.3d 133, 139 (Tex. App.—Fort Worth 2000, pet. denied)). An employee can avoid summary judgment if the evidence, taken as a whole, creates a fact issue "as to whether each of the employer's stated reasons was not what actually motivated the employer *and* creates a reasonable inference that [pregnancy or disability] was a determinative factor in the actions the [employee] is now complaining about." *Chandler*, 376 S.W.3d at 814 (emphasis in original) (quoting *Elgaghil*, 45 S.W.3d at 140); *see also Little v. Tex. Dep't of Criminal Justice*, 177 S.W.3d 624, 632 (Tex. App.—Houston [1st Dist.] 2005, no pet.)

("[T]he United States Supreme Court has made it clear that it is not sufficient merely to show that the employer's reasons are false or not credible; the plaintiff must prove that the employer discriminated intentionally." (citing *Reeves*, 530 U.S. at 146–47)). However, "an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves*, 530 U.S. at 148. The issue at the pretext stage is not whether the employer made an erroneous decision; it is whether the decision, even if incorrect, was the real reason for the termination. *Sandstad*, 309 F.3d at 899; *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995). The employer "is entitled to be unreasonable so long as it does not act with discriminatory animus." *Sandstad*, 309 F.3d at 899. If the employee intends to show the explanation is so unreasonable it must be pretextual, it is the employee's burden to proffer evidence creating a fact issue regarding reasonableness. *Id.* An employee's subjective belief that she suffered an adverse employment action as a result of discrimination, without more, is insufficient to survive a summary judgment motion. *Michael*, 314 S.W.3d at 691–92 (quoting *McCoy v. Tex. Instruments, Inc.*, 183 S.W.3d 548, 555 (Tex. App.—Dallas 2006, no pet.)).

Jespersen maintains she produced evidence that appellees' reasons for not letting her return to the leasing agent's job was a pretext for discrimination through evidence the ability to constantly walk and to work overtime were not essential functions of a leasing agent's job and that Beck told Jespersen on June 17, 2008 that no one had been hired for Jespersen's position. However, CNC's sick leave policy required every employee who was on medical leave for more than two days to provide a doctor's note before being allowed to return to work. Miles asked Jespersen to provide

–14–

a note from her doctor releasing Jespsersen to work. Jespersen did not provide the note to CNC until June 27, 2008. Goldstein testified the leasing agent job had been offered to another applicant and was no longer available. Jespersen offered no evidence a leasing agent position at Sweetwater Ranch was available after she provided Dr. Chesshir's note to CNC.

Goldstein also testified Jespersen was not reinstated because Dr. Chesshir did not release Jespersen for constant walking or to work more than forty hours per week. The evidence was undisputed there were no part-time leasing agent positions at Sweetwater Ranch and that employees at Sweetwater Ranch, including borrowed employees such as McMillan, were required to work overtime on a regular basis. Further, the job description for a leasing agent at Sweetwater Ranch stated the physical demands for the job included constant walking. Jespersen points to her testimony, as well as testimony from Miles, Kennedy, Beck, and McMillan, that a leasing agent was not required to constantly walk. However, Goldstein believed that, on any particular day, a leasing agent could be required to walk the entire day. Beck confirmed the walking requirements differed from day to day and that, on any given day, the leasing agent might be required to walk the entire time. Miles also confirmed that, due to the fact Sweetwater Ranch was not fully staffed, more walking could be required of a leasing agent. There is no evidence Goldstein did not believe Jespersen was unable to perform the job of leasing agent because she could not walk constantly and could not work overtime. Further, there is no evidence any applicant for the job who was not disabled or not pregnant, but was unable to work overtime or to constantly walk, was treated any differently than Jespersen.

Jespersen disagrees with appellees' decision not to allow her to return to work. However, appellees do not have the burden to prove their legitimate nondiscriminatory rationale is correct. *McCoy*, 183 S.W.3d at 556; *see also Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991)

("The existence of competing evidence about the objective correctness of a fact underlying a defendant's proffered explanation does not in itself make reasonable an inference that the defendant was not truly motivated by its proffered justification."); *Smith v. St. Regis Corp.*, 850 F.Supp. 1296, 1318 (S.D.Miss. 1994) (noting that an honest belief in a nondiscriminatory reason for employment decision, even if incorrect, is not discrimination), *aff'd*, 48 F.3d 531 (5th Cir. 1995) (per curiam). "In other words, arguing about the accuracy of the employer's assessment is a distraction because the question is not whether the employer's reasons for a decision are '*right* but whether the employer's description of its reasons is *honest*.'" *Kariotis v. Navistar Intern. Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997) (emphasis in original) (quoting *Gustovich v. AT&T Commc'ns, Inc.*, 972 F.2d 845, 848 (7th. Cir. 1992)). The ultimate question for the court "is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive." *Mayberry*, 55 F.3d at 1091.

Jespersen produced no evidence that appellees' reasons for refusing to reinstate her were a pretext for discrimination. Accordingly, the trial court did not err by granting appellees' no-evidence motion for summary judgment on Jespersen's claims based on pregnancy and disability discrimination. We resolve Jespersen's first two issues against her.

*Violation of Section 92.0081*

In her third issue, Jespersen contends the trial court erred by granting summary judgment on Jespersen's claim for violation of section 92.0081 of the property code. As relevant to this case, section 92.0081(b) of the property code prohibits a landlord from intentionally preventing a tenant from entering the leased premises except by judicial process unless the exclusion results from (1) bona fide repairs, construction, or an emergency, (2) removing the contents of premises abandoned by a tenant, or (3) changing the door locks of a tenant who is delinquent in paying at least part of the

rent. TEX. PROP. CODE ANN. § 92.0081(b) (West Supp. 2012). If the landlord changes the lock of a tenant who is delinquent in paying the rent, the landlord must place a written notice on the tenant's front door containing information about where the tenant can get a key, that the landlord must provide the new key, and the amount of rent or other charges for which the tenant is delinquent. *Id.* § 92.0081(c). If a landlord violates section 92.0081, the tenant may either recover possession of the premises or terminate the lease and recover statutory penalties, actual damages, court costs, and reasonable attorney's fees. *Id.* § 92.0081(h)–(i).

Appellees moved for summary judgment on Jespersen's claim under section 92.0081 on grounds (1) Jespersen had no evidence that she was locked out of the apartment or that appellees failed to provide the notice required by section 93.0081, and (2) the evidence conclusively established Jespersen abandoned the apartment before appellees changed the locks and was not entitled to damages. Jespersen moved for summary judgment on her claim under section 92.0081 on grounds the evidence conclusively established appellees locked her out of the apartment and failed to provide the notice required by section 92.0081. The trial court granted appellees' motion and dismissed Jespersen's claim.

Paragraph 42 of the lease between Jespersen and Sweetwater Ranch states a tenant abandons an apartment when all of the following have occurred:

(1) everybody appears to have moved out in our reasonable judgment;

(2) clothes, furniture, and personal belongings have been substantially removed in our reasonable judgment;

(3) you've been in default for non-payment of rent for 4 consecutive days, or water, gas, or electric service for the apartment not connected in our names has been terminated or transferred; and

(4) you've not responded for 2 days to our notice left on the inside of the main entry door, stating that we consider the apartment abandoned.

Abandonment of the apartment ends the tenant's "right of possession for all purposes" and gives Sweetwater Ranch the immediate right to clean, make repairs, and relet the apartment; determine any security deposit deductions; and remove property left in the apartment.

The evidence conclusively established Beck saw Jespersen moving her belongings out of the apartment on July 11, 2008. Jespersen does not dispute most of her belongings were moved out of the apartment prior to July 24, 2008. On July 16, 2008, Sweetwater Ranch was notified that Jespersen's check for the July rent had been returned due to insufficient funds. White and Beck entered Jespersen's apartment and, in their opinion, believed Jespersen had moved her belongings out of the apartment. The lease required Sweetwater Ranch to post a notice on the inside of any apartment that it believed had been abandoned by the tenant. Beck posted this notice. Pursuant to the lease, Jespersen had two days to dispute whether she had abandoned the apartment. Jespersen failed to do so. Accordingly, under the lease, Jespersen abandoned the apartment prior to July 24, 2008 and no longer had any right of possession to the apartment. On July 24, 2008, Jespersen was told she could not return to the apartment. Sweetwater Ranch then changed the locks to the apartment.

As relevant to this case, a tenant under section 92.0081 is a "person who is authorized by a lease to occupy a dwelling to the exclusion of all others." TEX. PROP. CODE ANN. § 92.001(6) (West 2007). On July 24, 2008, Jespersen was not authorized by a lease to occupy her apartment and, therefore, was not a tenant for purposes of section 92.0081. Accordingly, the trial court did not err by granting summary judgment for appellees on Jespersen's claim for violation of section 92.0081. We resolve Jespersen's third issue against her.

*Breach of Contract*

In her fourth and fifth issues, Jespersen argues the trial court erred by granting summary

judgment in favor of appellees on their counterclaim for breach of contract and on Jespersen's claim for breach of contract. Both parties filed motions for summary judgment on the competing breach of contract claims. The trial court granted appellees' motion for summary judgment, dismissed Jespersen's breach of contract claim, and ordered that Jespersen was liable to appellees for breach of contract. The trial court, however, did not grant summary judgment on the amount of damages Jespersen was required to pay. Rather, after a hearing that was essentially a bench trial on stipulated evidence, the trial court found both the amount of damages and attorney's fees that appellees were entitled to recover.

The elements of a breach of contract claim are (1) the existence of a valid contract, (2) the plaintiff's performance or tendered performance, (3) the defendant's breach of the contract, and (4) damages as a result of the breach. *AKB Hendrick, LP*, 380 S.W.3d at 234. Appellees moved for summary judgment on their breach of contract counterclaim on grounds Jespersen breached the lease by (1) failing to pay rent through the termination of the lease, (2) keeping a pet in her apartment without written authorization and without paying the required pet deposit, (3) failing to provide proper notice she was moving out of the apartment, and (4) failing to pay cleaning and damage charges and late payment fees. Jespersen admitted that she kept a pet in her apartment without the written authorization required by the lease. Further, although the lease specifically prohibited notice that Jespersen was moving out of the apartment from being given by email, Jespersen does not dispute that she attempted to provide notice by email in violation of the lease provisions. Finally, Jespersen admitted she did not pay cleaning and damage charges and late payment fees, but disputed the reasonableness of those fees. Accordingly, the trial court did not err by finding as a matter of law that Jespersen was liable to appellees for breach of contract.

Jespersen moved for summary judgment on her breach of contract claim on grounds she

established as a matter of law that she complied with her obligations under the lease and that appellees breached the lease by improperly increasing her rent, overcharging her for cleaning and repair of the apartment, preventing her from cleaning the apartment, and instructing her to leave the property. Appellees moved for summary judgment on Jespersen's breach of contract claims on grounds it did not improperly increase Jespersen's rent, it charged Jespersen reasonable fees for cleaning and repairing the apartment, it did not improperly exclude Jespersen from the apartment, and Jespersen had not been damaged.

We turn first to the issue of whether the evidence conclusively established Jespersen complied with her obligation to pay rent under the lease. Jespersen admitted her check for the July 2008 rent was returned for insufficient funds, but argues she did not owe any rent for July because she had been overpaying her rent under the terms of the lease. Jespersen's lease provided for a monthly rent of $956. However, an addendum to the lease stated Jespersen was to receive a prorated concession of $157 per month and a "preferred employer discount" of $159.80 per month. Section 10 of the lease stated:

> Receiving an employee discount of 20%. Resident will pay $639.20 plus utilities in the amount of $37.00 making amount due a month $676.20. Lease will be on a month to month basis; if employee is terminated she will 3-7 [sic] days to vacate apartment.

Jespersen contends the $157 prorated concession and the $159.80 preferred employer discount in the addendum were required to be deducted from the $639.20 rent in section 10 of the lease, rather than from the market rent of $956. Based on these calculations, she contends she had a credit balance of $426.60 in July 2008.

White testified there is generally a special rate that Sweetwater Ranch offered to prospective tenants that was less than the market rate. The difference between the market price and the special

price is considered to be a concession and a monthly discount from the market rent. Employees who lived at Sweetwater Ranch received a twenty percent discount from the market rent. However, this discount was sometimes taken off the special rate, rather than the market rate. Jespersen's employee discount was calculated this way.

The lease stated the market rate for Jespersen's apartment was $956. Jespersen received a monthly concession of $157, making the monthly rent owed $799. Twenty percent of $799 is $159.80, the amount of the "preferred employer discount," making the monthly rent owned $639.20. This is the exact amount stated in section 10 of the lease. Reading the entire lease, we conclude Jespersen's initial rent under the lease was $639.20. The evidence established that when Jespersen stopped working for CNC, she was no longer entitled to the employee discount. Sweetwater Ranch initially notified Jespersen that she also would no longer receive the concession of $157. However, Sweetwater Ranch ultimately determined Jespersen would continue to receive the concession. Her monthly rent then changed to $799 per month plus utilities. We conclude the evidence conclusively established appellees did not overcharge Jespersen for rent.

We next turn to Jespersen's argument that appellees breached the lease by assessing excessive charges for cleaning and repairing the property and by preventing her from returning to and cleaning the apartment on July 24, 2008. The evidence conclusively established that, after Jespersen abandoned the apartment, it was necessary to clean and perform some repairs on the apartment. Pursuant to the lease, Sweetwater Ranch was entitled to charge Jespersen for this work, and it is undisputed Jespersen did not pay the assessed charges. However, the trial court did not grant summary judgment to appellees as to the amount of the fees and charges they were entitled to recover. Rather, it held an evidentiary hearing as to the amount of damages, including the fees and charges. Finally, as set out above, because Jespersen abandoned the apartment on July 16, 2008, she was not

entitled to return to the property on July 24, 2008.

We conclude the trial court did not err by granting summary judgment dismissing Jespersen's breach of contact claim and determining Jespersen was liable to appellees for breach of contract. Accordingly, we resolve Jespersen's fourth and fifth issues against her.

## Attorney's Fees

In her sixth issue, Jespersen complains the trial court erred by awarding appellees attorney's fees because appellees (1) failed to plead for attorney's fees as to Jespersen's discrimination claims and Jespersen did not try the issue by consent, (2) failed to disclose any calculations or evidence of the claimed attorney's fees in response to Jespersen's discovery request, (3) failed to disclose an expert opinion from a qualified witness to support the request for attorney's fees, and (4) failed to make a demand for attorney's fees as required by section 38.001 of the civil practice and remedies code. Jespersen also contends CNC was not entitled to attorney's fees because it was not a party to the lease.

We turn first to Jespersen's complaint the trial court erred by not excluding appellees' evidence of attorney's fees. Jespersen objected to the evidence on grounds that appellees failed to adequately disclose their calculation of attorney's fees and their expert witness's opinion on attorney's fees in response to Jespersen's request for disclosure. *See* TEX. R. CIV. P. 193.6 (absent finding of good cause or lack of unfair surprise or prejudice, party who fails to timely respond to discovery request may not introduce into evidence material that was not timely disclosed or offer testimony of witness (other than named party) who was not timely identified). We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007) (per curiam). The trial court abuses its discretion when it acts in an unreasonable and arbitrary manner, or without reference to any guiding rules or principles.

–22–

*Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

The record does not contain a copy of appellees' responses to Jespersen's request for disclosures. Without reviewing appellees' responses, we cannot properly conclude Jespersen's complaint has merit. *See Santos v. Comm'n for Lawyer Discipline*, 140 S.W.3d 397, 403–04 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (rejecting appellant's complaint that trial court improperly admitted evidence of attorney's fees because record did not contain discovery requests in question). The record does reflect the trial court reviewed appellees' "Third Amended Response" and stated the response said appellees had "this testifying expert who will testify about the reasonable and necessary nature of the attorneys' fees and expenses" incurred by appellees. Further, the calculation of the amount of attorney's fees incurred by appellees is not an economic damage that is required to be disclosed in response to a request for disclosure. *Carter v. Flowers*, No. 02-10-00226-CV, 2011 WL 4502203, at *4 (Tex. App.—Fort Worth Sept. 29, 2011, no pet.) (mem. op.); *Shafer v. Gulliver*, No. 14-09-00646-CV, 2010 WL 4545164, at *11 (Tex. App.—Houston [14th Dist.] Nov. 12, 2010, no pet.) (mem. op.). We conclude the trial court did not abuse its discretion by admitting evidence of appellees' attorney's fees.

We next turn to Jespersen's complaint that the trial court erred by awarding appellees attorney's fees because appellees failed to make a demand on Jespersen as required by section 38.001 of the civil practice and remedies code. We review the trial court's award of attorney's fees for an abuse of discretion. *Bocquet v. Herring*, 972 S.W.2d 19, 20–21 (Tex. 1998); *R.J. Suarez Enters. Inc. v. PNYX L.P.*, 380 S.W.3d 238, 248–49 (Tex. App.—Dallas 2012, no pet.) ("Generally, an appellate court reviews a trial court's decision to award attorney's fees for an abuse of discretion.").

In their counterclaim, appellees sought attorney's fees based on paragraph 32 of the lease. This provision states, "Unless a party is seeking exemplary, punitive, sentimental, or personal-injury

damages, the prevailing party may recover from the non-prevailing party attorney's fees and all other litigation costs." "Parties are free to contract for a fee-recovery standard either looser or stricter than" those in chapter 38 of the civil practice and remedies code. *Intercontinental Grp. P'ship v. KB Home Lone Start L.P.*, 295 S.W.3d 650, 653 (Tex. 2009). In such a case, "the terms of the contract, not statute, control the outcome of the case." *Mohican Oil & Gas, LLC v. Scorpion Explor. & Prod., Inc.*, 337 S.W.3d 310, 321 (Tex. App.—Corpus Christi 2011, pet. denied).

The lease did not require Sweetwater Ranch to comply with the requirements of chapter 38 of the civil practice and remedies code before being entitled to recover attorney's fees. Therefore, appellees were not required to make a demand on Jespersen for payment before seeking to recover their attorney's fees for Jespersen's breach of contract.

We finally turn to Jespersen's complaint the trial court erred by awarding CNC, a non-party to the lease, attorney's fees on its breach of contract counterclaim. Jespersen sued CNC for breaching the lease. CNC answered, asserting a general denial followed by a number of affirmative defenses and brought a counterclaim for breach of contract. One of the affirmative defenses raised by CNC was that Jespersen could not recover against CNC on a breach of contract claim because CNC was not a party to the lease. Jespersen argues CNC judicially admitted in the affirmative defense that it was not a party to the lease and, therefore, CNC is not entitled to recover attorney's fees on its counterclaim. However, "[a]n affirmative defensive pleading following a general denial is not a judicial admission." *McRoy v. Riverlake Country Club, Inc.*, 426 S.W.2d 299, 303 (Tex. Civ. App.—Dallas 1968, writ ref'd n.r.e.) (citing *Straffus v. Barclay*, 147 Tex. 600, 603, 219 S.W.2d 65, 66 (1949)); *see also Kaye/Bassman Int'l Corp. v. Help Desk Now, Inc.*, 321 S.W.3d 806, 814 n.6 (Tex. App.—Dallas 2010, pet. denied) (alternative pleading in counterclaim did not constitute judicial admission); *Montague Cnty. v. Howard*, 590 S.W.2d 833, 834 (Tex. Civ. App.—Fort Worth 1979,

no writ) ("affirmative defense pleading following a general denial is not a judicial admission").

Therefore, CNC was not barred by its affirmative defense from recovering attorney's fees on its counterclaim.

We conclude the trial court did not err by awarding appellees attorney's fees on their breach of contract counterclaim.[3] We resolve Jespersen's sixth issue against her.

### Costs

In her seventh issue, Jespersen contends the trial court erred by awarding appellees costs of videotaped depositions and copies of depositions. Relying on *Gumpert v. ABF Freight System, Inc.*, 312 S.W.3d 237 (Tex. App.—Dallas 2010, no pet.), Jespersen argues these costs are not court costs recoverable under Texas law. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 31.007(b) (West 2008). Appellees respond that they sought to recover litigation costs under the lease and are not limited to court costs recoverable under section 31.007 of the civil practice and remedies code. "Awarding costs is largely a matter of trial court discretion." *Gumpert*, 312 S.W.3d at 239. We must uphold the trial court's decision unless, after searching the record, it is clear the court's decision was arbitrary and unreasonable. *Id.*

Under section 32 of the lease, the prevailing party is entitled to recover "attorney's fees and all other litigation costs." Litigation costs are not necessarily synonymous with court costs. *See Shook v. Walden*, 304 S.W.3d 910, 925 (Tex. App.—Austin 2010, no pet.) (noting that section

---

[3] Jespersen did not argue in the trial court, and does not assert on appeal, that appellees failed to segregate their fees between the claims for discrimination and for breach of contract. Jespersen, therefore, has waived any objection to appellees' failure to segregate their fees. *See Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997) (in the absence of an objection to the fact that attorney's fees are not segregated as to specific claims, objection is waived). Accordingly, because we conclude the trial court did not err by awarding appellees' attorney's fees on the breach of contract counterclaim, we need not address Jespersen's complaint the trial court erred by awarding attorney's fees based on the discrimination claims. *See* TEX. R. APP. P. 47.1.

–25–

42.001(5) of the civil practice and remedies code defines litigation costs to encompass more items than those included as costs under section 31.007 of the code). We conclude the trial court did not abuse its discretion by finding the contractual provision for the recovery of litigation costs encompassed the requested deposition costs. We resolve Jespersen's seventh issue against her.

We conclude the trial court did not err by granting summary judgment for appellees on Jespersen's claims for pregnancy and disability discrimination, violation of the property code, and breach of contract. The trial court also did not err by awarding appellees summary judgment on their counterclaim for breach of contract or by awarding appellees' attorney's fees and costs relating to the taking of videotaped depositions and obtaining copies of depositions. We affirm the trial court's judgment.

ROBERT M. FILLMORE
JUSTICE

110583F.P05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

SUNSHINE JESPERSEN, Appellant

No. 05-11-00583-CV      V.

SWEETWATER RANCH APARTMENTS
AND CNC INVESTMENTS, LTD, LLP,
Appellees

Appeal from the 14th Judicial District Court
of Dallas County, Texas. (Tr.Ct.No. 09-
02799-A).
Opinion delivered by Justice Fillmore,
Justices Moseley and Myers participating.

     In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**. It is **ORDERED** that appellees Sweetwater Ranch Apartments and CNC
Investments, Ltd, LLP recover their costs of this appeal from appellant Sunshine Jespersen.


Judgment entered December 5, 2012.


_____
ROBERT M. FILLMORE
JUSTICE