**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 7, 2011

No. 10-10960

Lyle W. Cayce
Clerk

HEATHER APPEL,

Plaintiff-Appellant,

versus

INSPIRE PHARMACEUTICALS, INC.,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:09-CV-1281

Before GARWOOD, SMITH, and STEWART, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Heather Appel appeals a summary judgment in favor of her employer,
Inspire Pharmaceuticals, Inc. ("Inspire"), on her sex and pregnancy discrimina-

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 10-10960

tion claim and her disability discrimination claim.  Finding no error, we affirm.

I.

Appel was hired as a Territory Manager in April 2008 by Inspire, a pharmaceutical sales company.  Territory Managers promote Inspire products to physicians, managed care organizations, and other health care providers.

In September 2008, Appel informed Inspire that she was pregnant and that her pregnancy was considered high-risk. Her physician provided Inspire with a document stating that Appel would be house-confined from September 16, 2008, until the end of her pregnancy.  On September 11, 2008, Inspire terminated Appel and posted her position for hire on September 23.  Appel underwent a surgical procedure in September 2008, remained on short-term disability leave for three months, and was formally terminated in December 2008.  Her position was filled in March 2009 by a non-pregnant woman.

Appel sued, claiming (1) sex and pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 2000e *et seq*.; and (2) disability discrimination in violation of the Americans with Disabilities Act ("ADA") and 42 U.S.C. § 12101 *et seq*.  The district court granted summary judgment to Inspire, holding that (1) Appel was not qualified to perform the job of Territory Manager while under her medical condition, a requirement under her title VII claim; and (2) she was not a qualified individual with a disability under the ADA.

II.

We review a summary judgment *de novo*, "using the same standard as that employed by the district court under Rule 56." *Kerstetter v. Pac. Scientific Co.*, 210 F.3d 431, 435 (5th Cir. 2000).  Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the mov-

No. 10-10960

ant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). There is no genuine issue for trial "[i]f the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party." *Kipps v. Caillier*, 197 F.3d 765, 768 (5th Cir. 1999). We review evidence in the light most favorable to the nonmoving party, but conclusional allegations and unsubstantiated assertions may not be relied on as evidence by the nonmoving party. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

## A.

Title VII prohibits intentional discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Discrimination on the basis of sex includes discrimination "on the basis of pregnancy, childbirth, or related medical conditions . . . ." *Id.* § 2000e(k).

Title VII discrimination can be established through direct or circumstantial evidence. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Where the plaintiff has not presented direct summary judgment evidence of discrimination, we apply the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973): A plaintiff alleging disparate treatment must first prove a *prima facie* case of discrimination by showing that (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) others similarly situated were treated more favorably. *Id.* at 802.

Once a plaintiff has made a *prima facie* case, the employer must provide "some legitimate nondiscriminatory reason" for the adverse action taken. *Id.* at 802. If the employer provides a nondiscriminatory reason, the burden shifts to the plaintiff to show a genuine issue of material fact that either (1) the employer's proffered nondiscriminatory reason is a pretext for discrimination or (2) re-

3

No. 10-10960

gardless of the nondiscriminatory reason, the discriminatory reason was a motivating factor in the employer's action. *See Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citation omitted).

The record does not support Appel's assertion that she can show direct discrimination. She points to a statement by one of her supervisors that she was fired because he believed Apple could not perform all the duties in her job description as a territory manager because of complications arising from her pregnancy. Appel misconstrues that statement as evidence that she was terminated because of her pregnancy: It is actually evidence that she was terminated because she was incapable of performing her job functions because of medical complications specific to her pregnancy. This is further evident from the testimony of another of Appel's supervisors:

> Q. Just so I understand correctly, if due to the procedure, if she had miscarried, for instance, and not been pregnant any longer, and able to come back, you wanted to have that opportunity for her; is that right?
>
> A. *If she was able to perform her job duties*, then we would have been welcome to have her back.
>
> Q. I wasn't there at the time. When you say complications, are you talking about if she was no longer pregnant?
>
> A. Well, if—my understanding, if she was no longer—I mean, if this surgical procedure did not work, if she was no longer pregnant, then she would have been able to—she would not need—*she would not have needed to be on bed rest which would have prevented her from doing her job*.

(Emphasis added).

There is nothing in the record that can be construed as direct evidence that Appel was terminated because of her pregnancy; rather, the record shows she was terminated because she could not perform her job duties owing to *medi-*

No. 10-10960

*cal complications* that were the result of her pregnancy.[1]  Thus, Appel has no direct evidence of discrimination and must instead rely on circumstantial evidence.

Appel cannot prove a *prima facie* case of discrimination using circumstantial evidence, because she cannot satisfy the second requirement of *McDonnell Douglas*: that she was qualified for the position given the medical restrictions placed by her physician during the high-risk pregnancy.  The job description for a Territory Manager at Inspire includes the following:

> Inspire's Territory Manager position is considered an outside sales position which requires the ability to physically call on physicians in order to promote Inspire's pharmaceutical products.  A major component of the position includes detailing the physicians regarding the products, answering questions and dropping off samples during these visits, which require a signature in order to stay within compliance regulations, therefore requiring face to face contact with the provider's officer.  The Territory Manager is also required to call on pharmacies and other special customers.

> The Territory Manager position requires the ability to receive sample shipments of three products along with all promotional material which at the time were being distributed to physician offices.  These boxes may weigh up to 40 lbs, each box needs to be opened and broken down into smaller allocations.  All materials/samples are then transferred into the company vehicle for daily use.

> Territory Managers are required to have the ability to spend extended periods of time behind the wheel of their company vehicles. Drive time per Territory Manager will vary depending on the size and demographics of the territory and scheduled rotating.  Territory routing will usually consist of a 2-3 week call cycle requiring the face to face contact with each office.

---

[1] Appel also points to statements showing that Inspire waited until after her September surgery to post a job listing because it would be willing to rehire her if the surgery had gone poorly and she were to miscarry her baby.  Appel argues that waiting for a miscarriage shows that Inspire plainly cared about her pregnancy status.  Although waiting for a possible miscarriage might appear unseemly, it is not direct evidence of discrimination.  If the surgery had gone wrong and Appel was no longer pregnant, she would not suffer from the medical complications that would leave her unable to perform her job duties, so Inspire would have no reason to terminate her employment—consistent with the other statements made by Inspire.

No. 10-10960

Many of these physical responsibilities would be impossible for Appel, who had been ordered to remain at home, in bed, for the duration of her pregnancy, rendering her unqualified for the position of Territory Manager.[2]  Inspire also presented evidence that these physical aspects of the position were essential: Appel's supervisors testified that face-to-face promotion was necessary in the pharmaceutical sales industry and that, without having someone visit those offices every day, sales would decline in six to eight weeks.[3]

Appel argues that there were many aspects of her job that she could accomplish even with her medical limitations, but she cannot rebut the fact that she would be unable to perform many of the physical responsibilities of a Territory Manager.  Nor does she provide any information to rebut Inspire's evidence that the physical aspects of the position are essential to proper performance, beyond her own base declarations of such, none of which rises to the level of creating a genuine dispute as to a material fact.[4]  In sum, as a result of the medical

---

[2] Appel claims that this job description should not be accorded any credence, because "Inspire may have created this job description after Appel was terminated or worse after Appel filed her EEOC charge."  She does not provide any evidence beyond this allegation to substantiate her conclusional claim that the document did not accurately portray the job responsibilities of a Territory Manager, nor does she rebut the evidence that shows these are the responsibilities she performed in that job before she had her medical complications.  In her deposition, Appel admitted that she had received this job description and that she knew making face-to-face visits was an essential function of her job.

[3] Appel argues that Inspire's failure to fill her vacant position until months after she had been terminated cuts against Inspire's claim that face-to-face visits were necessary, but her argument is unconvincing.  Inspire's failure to find someone to replace Appel has no bearing on the propriety of terminating her employment—there could be many reasons why it was unable to fill her position (Inspire claims that a hiring freeze was put into place by the corporation before they could find someone qualified for the position), none of which would affect the determination that Appel was unqualified for the job.

[4] Appel does point to the situation of Jason Wisinki, another Inspire employee, who took a leave of over ninety days without being terminated.  Appel does not, however, provide any evidence to show that her situation was similar to that of Wisinki's.  To the contrary, there is evidence in the record suggesting their situations were dissimilar.  As an initial matter, they held different formal positions (Wisinski is described as a Sales Representative, but Appel was

(continued...)

6

No. 10-10960

complications of her pregnancy, Appel was unqualified for her position, so she cannot make a *prima facie* of discrimination, and summary judgment on her Title VII claim was proper.

B.

The ADA prohibits discrimination against a qualified individual because of a disability "in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training; and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A person is disabled under the ADA if he (1) has a physical or mental impairment that substantially limits one or more of the major life activities, (2) has a record of such impairment, or (3) is regarded as having such an impairment. *Id.* § 12102(2). A recognized disability is not sufficient for relief under the ADA, however; a claimant must be a "qualified individual with a disability." The relevant statute defines a qualified individual as

> an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

*Id.* § 12111(8). An employee who cannot perform essential job requirements, even with accommodation, is not a qualified person with a disability.

Appel contends that her disability is an incompetent cervix. Assuming

---

[4] (...continued)
a Territory Manager). Additionally, Inspire suggests that Wisinski's leave was pursuant to a possible Family Medical Leave Act requirement (we do not rely on this to distinguish Wisinski's situation from Appel's, because the record is bare on a possible FMLA rationale, but we point to it as one possible difference Appel has not addressed because she has in fact addressed no possible differences or possible similarities between her situation and Wisinski's).

No. 10-10960

without deciding that an incompetent cervix is a disability within the meaning of the ADA, Appel is still not a qualified individual with a disability. As discussed above, the record shows that there are many physical requirements essential to the Territory Manager position that Appel was unable to perform, nor has she put forth any competent summary judgment evidence showing that she could perform those physical requirements even with accommodation.

## C.

Appel argues that the district court granted summary judgment on her Title VII claim *sua sponte* on grounds not requested by the moving party. She contends that Inspire's motion for summary judgment argued for judgment on only two grounds—that there was no evidence of disparate treatment and no evidence of pretext—but the district court granted summary judgment primarily on the issue of Appel's lack of qualification for the Territory Manager position— also the reason why we affirm the summary judgment.

Although it is true that the thrust of Inspire's motion for summary judgment was on the issue of disparate treatment, it raised the issue of Appel's qualifications. For example, here is an excerpt from the introduction to the motion:

> An essential element of Plaintiff's job function was to travel outside her home and meet with various doctors in order to provide doctors with information about Inspire's pharmaceutical products. Plaintiff provided Inspire with medical documentation that specifically prohibited Plaintiff from performing this essential element of her employment as well as several other elements of her position, and it was only after this medical documentation was received that Inspire terminated Plaintiff's employment. Further, at no time did Plaintiff ever ask for a reasonable accommodation, nor could one have been provided if requested given the nature of Plaintiff's medical restriction as mandated by her doctor. As such, Inspire's decision to terminate Plaintiff's employment was based on non-discriminatory and legitimate business needs and was not discriminatory.

Furthermore, the extensive briefing, along with the motion for summary

No. 10-10960

judgment and Appel's response to the motion, included a discussion of whether Appel was a "qualified individual with a disability" pursuant to the ADA, an analysis that mirrors precisely the discussion of whether Appel was qualified for the position under step two of *McDonnell Douglas*.

Accordingly, the district court's decision regarding Appel's qualifications was not made *sua sponte*.  Rather, the court, confronted with the same question in evaluating Appel's ADA claim, concluded that her medical condition rendered her unqualified to perform the job responsibilities of a Territory Manager—a factual conclusion that also warranted summary judgment on the Title VII claim.

AFFIRMED.