**Opinion issued August 12, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-13-00695-CV**

————————————

**KIPP, INC., Appellant**

**V.**

**KIMBERLY WHITEHEAD, Appellee**

---

**On Appeal from the 234th District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-70657**

---

## O P I N I O N

In this interlocutory appeal,[1] appellant, KIPP, Inc. ("KIPP"), challenges the

trial court's order denying its plea to the jurisdiction[2] on the claims brought against

---

[1]     *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (Vernon Supp. 2013)
        (permitting governmental unit to appeal order denying plea to jurisdiction).

it by appellee, Kimberly Whitehead, for employment discrimination based on her sex and race.[3] In five issues, KIPP contends that the trial court erred in denying its plea.[4]

We affirm.

## Background

In her original petition, Whitehead, who is Caucasian, alleges that KIPP, an open-enrollment charter school,[5] employed her as an "Administrative Learning Specialist" from April 2009 to February 17, 2011, when it terminated her employment. Later, KIPP designated her as a "Facilitated Support Service employee," assisting teachers with failing students.

In summer 2010, KIPP hired Daphane Carter, who is African-American, as the new "School Leader," or principal. In August 2010, Whitehead, while pregnant, suffered a serious illness requiring her hospitalization and absence from

---

[2]      Although KIPP challenged the trial court's jurisdiction in both its summary-judgment motions and its plea to the jurisdiction, we review KIPP's challenge as one to the trial court's denial of its plea to the jurisdiction. *See id.*; *Tex. Dep't of Criminal Justice v. Simons*, 140 S.W.3d 338, 349 (Tex. 2004).

[3]      *See* TEX. LAB. CODE ANN. §§ 21.002–.556 (Vernon 2006 & Supp. 2013).

[4]      Whitehead acknowledges in her brief to this Court that she has abandoned her retaliation claim. Thus, we need not address KIPP's first issue, in which it argues that Whitehead has abandoned the claim. *Cf. MacFarlane v. Burke*, No. 01-10-00409-CV, 2011 WL 2503937, at *4 (Tex. App.—Houston [1st Dist.] June 23, 2011, no pet.) (mem. op.) (reciting elements of judicial admission).

[5]      *See* TEX. EDUC. CODE ANN. § 12.105 (Vernon 2012) ("An open-enrollment charter school is part of the public school system of this state.").

work under the Family Medical Leave Act ("FMLA").[6] Carter in turn assigned Whitehead's duties to Andrea Dozier, who is also African-American, while Whitehead was out on FMLA leave.

Whitehead further alleges that when she returned to work from her FMLA leave on October 5, 2010, she "was assigned job duties that were different from the job duties she discharged prior to her . . . medical leave." When she asked for her job duties to be reassigned to her, she "was told that would not happen because [she] was about to go on maternity leave," but she "was assured that upon returning from pregnancy leave, her old job duties would be given back to her."

On November 2, 2010, Whitehead went on maternity leave, and she delivered her baby the following day. When she returned to work on December 3, 2010, she "asked for her old job back," but was told "that would happen after Christmas." When Whitehead met with Carter about her job on January 11, 2011, Carter then told her, "You don't fit i[n]. You just had a baby. You're just an overpaid teacher. I can't afford your salary. I gave your job away. You cannot do this job having children. Things have changed around here. If you don't like it, you need to apply at Nordstrom."

Subsequently, after Whitehead refused to resign, "Carter became very hostile toward" her, and on February 9, 2011, during a job-performance evaluation,

---

[6]    *See* 29 U.S.C. §§ 2612(a)(1), 2614(a)(1) (2012).

Carter told her that she "was not doing her job." Immediately afterward, Whitehead filed a complaint with Chuck Fimble, KIPP's Human Resources Director, asserting "FMLA discrimination, a hostile work environment, and race discrimination." On February 17, 2011, Carter called Whitehead into a meeting with Fimble, and she handed Whitehead a letter terminating her employment.

Whitehead then filed a discrimination charge against KIPP with the Equal Employment Opportunity Commission ("EEOC") and the Texas Commission on Human Rights ("TCHR"), alleging retaliation and discrimination based on race and sex.

Whitehead filed the instant suit after the TCHR issued her a "right-to-sue" letter. KIPP answered and then filed a matter-of-law and no-evidence summary-judgment motion and a plea to the jurisdiction, asserting sovereign immunity. In its plea, KIPP argued that the trial court did not have subject-matter jurisdiction and should dismiss the suit because Whitehead "cannot prove essential elements of her claims." KIPP asserted that Whitehead lacked standing to assert a pregnancy-discrimination claim as she was not a member of a protected class, did not suffer an adverse employment action in connection with her race, cannot establish a causal connection between her human-resources complaint and the termination of employment, cannot demonstrate that KIPP's stated rationale for terminating her

4

employment was based on a pretext, and lacked evidence to support the essential elements of her claims.

Whitehead responded, arguing that the trial court had subject-matter jurisdiction over her claims because her pleaded allegations establish "a prima facie case of pregnancy and race discrimination." The trial court denied KIPP's plea to the jurisdiction and summary-judgment motions.

**Standard of Review**

We review de novo a trial court's ruling on a jurisdictional plea. *City of Hous. v. Vallejo*, 371 S.W.3d 499, 501 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject-matter jurisdiction. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). A plaintiff has the burden to allege facts that affirmatively demonstrate that the trial court has subject-matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). A plea to the jurisdiction can be utilized to challenge whether the plaintiff has met her burden of alleging jurisdictional facts, but it can also raise a challenge to the existence of jurisdictional facts. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004). When reviewing a trial court's ruling on a jurisdictional plea, we construe the pleadings liberally in favor of the pleader, accept all factual

5

allegations as true, and look to the pleader's intent. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012).

A trial court's review of a plea challenging the existence of jurisdictional facts mirrors that of a matter-of-law summary-judgment motion. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012); *Miranda*, 133 S.W.3d at 228; *see also* TEX. R. CIV. P. 166a(c). Thus, the court can consider evidence as necessary to resolve any dispute over the jurisdictional facts, even if the evidence "implicates both the subject matter jurisdiction of the court and the merits of the case." *Miranda*, 133 S.W.3d at 226. The defendant is required to meet the summary-judgment standard of proof on its assertion that the trial court lacks jurisdiction; once the defendant meets its burden, the plaintiff is then required to show that there is a disputed material fact regarding the jurisdictional issue. *Id*. at 228. If the evidence creates a fact question regarding jurisdiction, the trial court must deny the plea to the jurisdiction and leave its resolution to the fact finder. *Id.* at 227–28. On the other hand, if the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Garcia*, 372 S.W.3d at 635.

### Governmental Immunity

Under the common-law doctrine of sovereign immunity, the state cannot be sued without its consent. *City of Hous. v. Williams*, 353 S.W.3d 128, 134 (Tex.

6

2011). Governmental immunity operates like sovereign immunity to afford similar protection to subdivisions of the state, including counties, cities, and school districts. *Sykes*, 136 S.W.3d at 638. Like sovereign immunity, "governmental immunity has two components: immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether." *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). Governmental immunity from suit deprives a trial court of subject-matter jurisdiction and is properly asserted in a plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 225–26. As an open-enrollment charter school, KIPP enjoys governmental immunity from suit. *LTTS Charter Sch., Inc. v. Palasota*, 362 S.W.3d 202, 208 (Tex. App.—Dallas 2012, no pet.).

The Texas Legislature has provided a limited waiver of sovereign and governmental immunity for employment discrimination and retaliation claims falling within Chapter 21 of the Texas Labor Code. *See* TEX. LAB. CODE ANN. §§ 21.051(1), 21.055 (Vernon 2006) (prohibiting unlawful employment practices by "employer"); *see also id.* § 21.002(8)(D) (Vernon Supp. 2013) (defining "employer" to include "a county, municipality, state agency, or state instrumentality"). To establish waiver, a plaintiff must plead the elements of her statutory cause of action, i.e., the basic facts that make up a prima facie case, so that a court can determine whether she has sufficiently alleged a violation under

Chapter 21; she will only be required to submit evidence if the defendant presents evidence negating one of those basic facts. *Garcia*, 372 S.W.3d at 637.

Although the Texas Legislature has waived immunity for suits brought against school districts under Chapter 21, immunity is waived only for those suits in which "the plaintiff actually alleges a violation" of Chapter 21 "by pleading facts that state a claim thereunder." *Garcia*, 372 S.W.3d at 636. In other words, a plaintiff must actually allege a violation of Chapter 21 in order for there to be a waiver from suit. *Id.* at 636–37. Failure by a plaintiff to allege a Chapter 21 violation means the court has no jurisdiction and the claim should be dismissed. *Id.* at 637. This standard does not require the plaintiff to marshal evidence and prove her claim. *Id.* Again, the plaintiff is required to submit evidence only if the defendant presents evidence negating one of those basic facts. *Id.*

### Employment Discrimination

In its second and third issues, KIPP argues that the trial court erred in denying its plea to the jurisdiction on Whitehead's claim against it for discrimination based on sex because (1) she was not "a member of a protected class based on pregnancy when she was not pregnant at the time" it terminated her employment and (2) "neither she nor her replacements were pregnant." In its fourth issue, KIPP argues that the trial court erred in denying its plea on Whitehead's claim against it for discrimination based on race because she cannot

8

establish she was "replaced by an African-American employee." In its fifth issue, KIPP argues that the trial court erred in denying its plea on Whitehead's claims against it for discrimination based on both sex and race because she did not establish that its "legitimate, nondiscriminatory . . . reasons for terminating her employment were pretextual."

Whitehead brings her claims against KIPP for employment discrimination, based on sex and race, under Chapter 21. *See* TEX. LAB. CODE ANN. §§ 21.001–.556 (Vernon 2006 & Supp. 2013). Chapter 21 "is a comprehensive fair employment practices act and remedial scheme, modeled after Title VII of the federal Civil Rights Act of 1964," which "provides the framework for employment discrimination claims in Texas." *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 502–03 (Tex. 2012). Chapter 21 was "'enacted to address the specific evil of discrimination and retaliation in the workplace,' as well as to coordinate and conform with federal anti-discrimination and retaliation laws under Title VII." *Id.* at 504 (quoting *City of Waco v. Lopez*, 259 S.W.3d 147, 153–55 (Tex. 2008)). Although we consider the plain language of Chapter 21 and state case-law precedent in interpreting Chapter 21, because of its relationship to Title VII, we also look to federal law for guidance in situations where Chapter 21 and Title VII contain analogous statutory language. *Id.* at 505.

Under Chapter 21,

An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:

(1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or

(2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.

TEX. LAB. CODE ANN. § 21.051. Discrimination based on sex includes discrimination because of pregnancy, childbirth, or related medical conditions. *Id.* § 21.106(a) (Vernon 2006). The employee may establish discrimination by either direct or circumstantial evidence, or both. *Garcia*, 372 S.W.3d at 634, 638; *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476–77 (Tex. 2001).

### *Direct vs. Circumstantial Evidence*

At the outset, KIPP, in support of its arguments made in its second, third, and fourth issues that the trial court erred in denying its plea on Whitehead's claims against it for discrimination based on sex and race, first asserts that she "has no direct evidence" of discrimination, as Carter's alleged behavior towards Whitehead was not "discriminatory in nature." It further argues that none of Carter's "comments, even if true, constitutes direct evidence of discrimination

because each requires an inference or presumption to discern a discriminatory animus." In response, Whitehead asserts that the comments that Carter made to her at their January 11, 2011 meeting do constitute direct evidence of discrimination.

In an employment-discrimination case, if the employee produces direct evidence that discriminatory animus played a role in the decision at issue, the burden of persuasion shifts to the employer, who must prove that it would have taken the same action regardless of discriminatory animus. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250–53, 109 S. Ct. 1775, 1790–92 (1989); *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002); *Walcott v. Tex. S. Univ.*, No. 01-12-00355-CV, 2013 WL 593488, at *4 (Tex. App.—Houston [1st Dist.] Feb. 14, 2013, no pet.) (mem. op.).

"Direct evidence of discrimination is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Jespersen v. Sweetwater Ranch Apartments*, 390 S.W.3d 644, 653 (Tex. App.—Dallas 2012, no pet.); *see also Sandstad*, 309 F.3d at 897. "If an inference is required for the evidence to be probative as to the employer's discriminatory animus in making the [adverse] employment decision, the evidence is circumstantial, not direct." *Jespersen*, 390 S.W.3d at 653–54; *see also Sandstad*, 309 F.3d at 897–98. Generally, statements that courts have found to constitute direct evidence of

11

discrimination are insults or slurs made against a protected group. *See Jespersen*, 390 S.W.3d at 654; *see also Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994) (discussing case in which supervisor routinely made open racial slurs); *Martin v. Bayland Inc.*, 403 F. Supp. 2d 578, 582 (S.D. Tex. 2005), *aff'd*, 181 F. App'x 422 (5th Cir. 2006).

Here, in deposition testimony attached to Whitehead's response to KIPP's plea to the jurisdiction, Whitehead testified that when she met with Carter about her job on January 11, 2011, Carter told her, "You don't fit in. You don't fit in anymore. I gave your job away." Further, Carter stated, "You are just an overpaid teacher. . . . You just had a baby. I gave your job away. What do you want me to do? You just don't fit in." And, "Things have changed. If you don't like it, you can . . . go work at Nordstrom's." Whitehead also explained that "Carter told [her] that [she] couldn't handle th[e] job having children."

However, Whitehead has not alleged, and she did not produce evidence, that anyone from KIPP ever told her that she would not be returned to her previous job duties after her illness in August because she was pregnant. Nor did she allege or present any evidence that anyone at KIPP made negative comments about her pregnancy.[7] The evidence relied upon by Whitehead requires an inference or

---

[7]     The only specific comment that Carter made to Whitehead about her pregnancy was when she "rude[ly]" asked Whitehead, in October, why she was still at work if her water had broken.

presumption that KIPP terminated her employment because of her pregnancy, and, thus, it is circumstantial. *See Appel v. Inspire Pharm., Inc.*, 428 F. App'x 279, 282 (5th Cir. 2011) (evidence employment terminated because employee could not perform her job duties due to medical complications resulting from pregnancy did not constitute direct evidence of discrimination).

In the absence of direct evidence of discrimination, an employee must make out a prima facie case of discrimination under the *McDonnell-Douglas* burden shifting analysis. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S. Ct. 1817, 1824–26 (1973); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43, 120 S. Ct. 2097, 2106 (2000); *Fort Bend Indep. Sch. Dist. v. Williams*, No. 01-13-00052-CV, 2013 WL 4779693, at *3 (Tex. App.—Houston [1st Dist.] Sept. 5, 2013, no pet.) (mem. op.); *Jespersen*, 390 S.W.3d at 654. Under this analysis, the employee is entitled to a presumption of discrimination if she meets the "minimal" initial burden of establishing a prima facie case of discrimination. *Garcia*, 372 S.W.3d at 634.

To establish a prima facie case of discrimination, the employee must show that she: (1) is a member of a protected class; (2) was qualified for her position; (3) suffered an adverse employment action; and (4) was replaced by someone outside of her protected class or others similarly situated were treated more favorably (disparate-treatment cases). *Reeves*, 530 U.S. at 142, 120 S. Ct. at 2106;

*AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008). To establish a prima facie case, the plaintiff is only required to make a minimal showing. *El Paso Cmty. Coll. v. Lawler*, 349 S.W.3d 81, 86 (Tex. App.—El Paso 2010, pet. denied).

## Sex Discrimination

In its second issue, KIPP specifically argues that Whitehead has not provided evidence of the first element[8] of her sex-discrimination claim because she has not shown that she was actually pregnant at the time that KIPP terminated her employment. Whitehead responds that Chapter 21 does not require that a woman be pregnant at the time of an adverse employment action based upon pregnancy.

Chapter 21 prohibits employers from discriminating against employees "on the basis of pregnancy, childbirth, or a related medical condition." TEX. LAB. CODE ANN. § 21.106(a). Women who were pregnant at, or very near the time of, an adverse employment action are members of the protected class, as are women who were on maternity leave, or who had recently returned to work at the time of the adverse action. *Helmes v. S. Colonie Cent. Sch. Dist.*, 564 F. Supp. 2d 137, 147 (N.D.N.Y. 2008). However, unlike other protected traits, "pregnancy is somewhat divergent" because "'it is not immutable,' and at some point, 'the female employee is no longer affected by pregnancy, childbirth, or related conditions.'" *Walker v. Wal-Mart Stores, Inc.*, No. 1:12-CV-74-SA-DAS, 2013

---

[8] In its jurisdictional arguments, KIPP does not challenge the second and third elements of Whitehead's claim for sex discrimination.

14

WL 3940662, at *7 (N.D. Miss. July 31, 2013) (quoting *Solomen v. Redwood Advisory Co.*, 183 F. Supp. 2d 748, 753 (E.D. Pa. 2002)). Thus, one of the primary issues presented in a case in which a woman is not pregnant at the time of an adverse employment action becomes where to "draw th[e] line." *Id.* Accordingly, whether the plaintiff is a member of the protected class in pregnancy discrimination cases is best determined on a "case-by-case basis." *Helmes*, 564 F. Supp. 2d at 147.

Here, Whitehead, in her original petition, alleges in pertinent part:

> Plaintiff is a White female. . . .
>
> In August 2010 Plaintiff became ill while pregnant. . . .
>
> On October 5, 2010 Plaintiff returned to work and was assigned job duties that were different from the job duties she discharged prior to her going on medical leave. . . .
>
> On November 2, 2010 Plaintiff went on pregnancy leave and delivered a boy on November 3, 2010. Thereafter she was on maternity leave for 19 days. She returned to work on December 3, 2010 . . . .
>
> Upon returning to work Plaintiff asked for her old job back. She was told that would happen after Christmas. . . .
>
> On January 11, 2011 Plaintiff met with . . . Carter who told the Plaintiff "You don't fit i[n]. You just had a baby. You're just an overpaid teacher. I can't afford your salary. I gave your job away. You cannot do this job having children. Things have changed around here. If you don't like it, you need to apply to Nordstrom."

15

. . . On February 9, 2011 [Carter] called a Mid-Year Performance Evaluation in the presence of 2 of Plaintiff's coworkers. Plaintiff was told she was not doing her job. . . .

. . . On February 17, 2011 . . . Carter called the Plaintiff into a meeting with . . . Fimble in which she was handed a termination letter.

. . . .

. . . Because of her sex/pregnancy Plaintiff was a member of a protected class which enjoyed the special protection of the law. During her employment with [KIPP], [KIPP] treated the Plaintiff less favorably in the terms and conditions of her employment than its similarly situated, non-pregnant employees, because of her sex/pregnancy. Plaintiff also was terminated because of pregnancy and/or on account of her pregnancy leave and/or childbearing. The acts of [KIPP] constitute discrimination against the Plaintiff in the terms and conditions of her employment because of her pregnancy. This discrimination is the proximate cause of both economic and mental damages suffered by the Plaintiff.

Whitehead also attached evidence to her response to KIPP's motions showing that KIPP terminated her employment on February 17, 2011, less than three months after she had returned from maternity leave, and KIPP does not dispute that it terminated her employment on this date. Further, near the time Whitehead was hospitalized and absent from work from August to October, Carter discussed with Fimble terminating Whitehead's employment and Whitehead's pregnancy.

We conclude that Whitehead presented evidence establishing a prima facie case that she was a "member of the protected class" in regard to her sex-discrimination claim based on her pregnancy, childbirth, and related medical

16

issues. Her evidence that she returned to work from maternity leave on December 3, 2010 and KIPP terminated her employment less than three months later is sufficient to create a fact issue as to her membership in the protected class. And the existence of this fact issue precludes the granting of KIPPS's plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 227–28. Accordingly, we hold that the trial court did not err in denying KIPP's plea to the jurisdiction on Whitehead's sex-discrimination claim on the ground that she was not a member of a protected class.

We overrule KIPP's second issue.

In its third issue, KIPP specifically argues that Whitehead has not provided evidence of the fourth element of her sex-discrimination claim because she has not shown that she was replaced by someone outside of her protected class, i.e., a non-pregnant person. It argues that she cannot logically do so because she was not actually pregnant when KIPP terminated her employment.

As discussed above, an employee does not have to be pregnant at the time of an adverse employment action to be a member of the class of individuals protected from sex discrimination based on pregnancy. Likewise, Whitehead did not have to be pregnant to establish the "replacement" element of her prima facie case for pregnancy discrimination. Again, Chapter 21 specifically prohibits employers

17

from discriminating against employees "on the basis of pregnancy, childbirth, or a related medical condition."  TEX. LAB. CODE ANN. § 21.106(a).

Here, Whitehead provided evidence that she was replaced by Dozier and/or Nicole Santos, neither of whom, during the pertinent time period, had been pregnant, given birth to a child, or suffered from a medical condition related to pregnancy or childbirth.  KIPP does not dispute these facts.

We conclude that Whitehead presented evidence establishing a prima facie case that KIPP replaced her with someone outside of her protected class. Whitehead's evidence that KIPP replaced her with either Dozier or Santos is sufficient to create a fact issue that she was replaced by someone who was not a member of the protected class.  And the existence of this fact issue precludes the granting of KIPP's plea to the jurisdiction.  *See Miranda*, 133 S.W.3d at 227–28. Accordingly, we hold that the trial court did not err in denying KIPP's plea to the jurisdiction on Whitehead's sex-discrimination claim on the ground that she was not replaced with someone outside of her protected class.

We overrule KIPP's third issue.

### Race Discrimination

In its fourth issue, KIPP argues that Whitehead has not established a prima facie case of race discrimination because she cannot establish that she was replaced by an African-American employee.  Whitehead argues that the trial court properly

denied KIPP's plea to the jurisdiction on this ground because genuine issues of material fact exist as to whether she was replaced by Dozier, an African-American, or Santos, an Hispanic.

The prima facie elements of a race-discrimination claim are the same as those for a sex-discrimination claim. In order to establish a prima facie case of race discrimination, a plaintiff must show that she: (1) is a member of a protected class; (2) was qualified for her position; (3) suffered an adverse employment action; and (4) was replaced by someone outside of her protected class. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011).

Here, Whitehead, in her original petition, alleges in pertinent part:

> Plaintiff is a White female. . . .
>
> In August 2010 Plaintiff became ill while pregnant. . . .
>
> On October 5, 2010 Plaintiff returned to work and was assigned job duties that were different from the job duties she discharged prior to her going on medical leave. During her absence, the person to whom she reported, Jamila Singleton, was removed from her position and was replaced by a new principal, . . . Carter. In her previous position Plaintiff was replaced by . . . Dozier, African American. . . .
>
> . . . .
>
> Upon returning to work [from maternity leave] Plaintiff asked for her old job back. She was told that would happen after Christmas. . . .
>
> On January 11, 2011 Plaintiff met with . . . Carter who told the Plaintiff "You don't fit i[n]. You just had a baby. You're just an overpaid teacher. I can't afford your salary. I gave your job away.

You cannot do this job having children. Things have changed around here. If you don't like it, you need to apply to Nordstrom."

Plaintiff refused to resign. Thereafter [Carter] became very hostile toward the Plaintiff. On February 9, 2011 [Carter] called a Mid-Year Performance Evaluation in the presence of 2 of Plaintiff's coworkers. Plaintiff was told she was not doing her job. The same day she went in to HR and filed a complaint against . . . Carter alleging FMLA discrimination, a hostile work environment, and race discrimination. The race discrimination complaint was based on . . . Carter, who is Black, telling the Plaintiff that she did not fit i[n]. In contrast, Plaintiff is Caucasian, and at that time was the only Caucasian employee on the Defendant's administrative staff. Everyone else was Black. Plaintiff was replaced by a Black person.

. . . On February 17, 2011 . . . Carter called the Plaintiff into a meeting with . . . Fimble in which she was handed a termination letter.

. . . .

. . . Because of her race, White, Plaintiff was a member of a protected class which enjoyed the special protection of the law. During her employment with [KIPP], [KIPP] treated the Plaintiff less favorably in the terms and conditions of her employment than its similarly situated, yet nonprotected employees, because of her race. The acts of [KIPP] constitute discrimination against the Plaintiff in the terms and conditions of her employment because of her race. Defendant terminated Plaintiff's employment because of her race, and preference for African-American employees. This discrimination is a proximate cause of both economic and mental damages suffered by the Plaintiff.

KIPP asserts that it presented evidence that it replaced Whitehead only temporarily with Dozier and permanently with Santos when Dozier left KIPP. Thus, according to KIPP, Whitehead cannot establish the prima facie element that KIPP replaced her with someone outside of her protected class. However,

20

Whitehead did present evidence that KIPP replaced her with Dozier when it terminated Whitehead's employment in February 2011, and she established that Dozier, an African-American, is not a member of Whitehead's protected class. *See Young v. City of Hous., Tex.*, 906 F.2d 177, 182 (5th Cir. 1990) (concluding fact question existed regarding when evidence showed employee alleging age discrimination replaced by someone older or younger than himself). Additionally, if Santos, an Hispanic, was Whitehead's permanent replacement, she too, is not a member of Whitehead's protected class. *See Arevalo v. Hous. Cmty. Coll.*, No. H-12-3607, 2013 WL 5168949, at *2 (S.D. Tex. Sept. 12, 2013) (concluding that Hispanic plaintiff alleging replacement by white employee, not member of her protected class, had alleged facts adequately stating claim for discrimination); *Elsik v. Regency Nursing Ctr. Partners of Kingsville, Ltd.*, No. V-06-41, 2007 WL 2428288, at *5 (S.D. Tex. Aug. 22, 2007) (stating Caucasian plaintiff established prima facie element of replacement by employee outside her protected class when replaced by Hispanic male).

We conclude that Whitehead has raised a genuine issue of material fact as to whether KIPP replaced her with someone outside of her protected class. Whitehead's evidence is sufficient to create a fact issue as to whether she was replaced by someone who was not a member of the protected class. And the existence of this fact issue precludes the granting of KIPP's plea to the jurisdiction.

21

*See Miranda*, 133 S.W.3d at 227–28.  Accordingly, we hold that the trial court did not err in denying KIPP's plea to the jurisdiction on Whitehead's race-discrimination claim on the ground that she was not replaced with someone outside of her protected class.

We overrule KIPP's fourth issue.

*Pretext*

In its fifth issue, KIPP asserts that Whitehead "failed to create a fact issue as to the legitimacy of all of KIPP's nondiscriminatory and non-retaliatory reasons" for terminating her employment.  The Texas Supreme Court has explained that the prima facie elements of a Chapter 21 employment-discrimination claim are jurisdictional, and thus, properly addressed in a plea to the jurisdiction.  *Garcia*, 372 S.W.3d at 634; *see also Williams*, 2013 WL 4779693, at *3 n.4 ("[T]he Texas Supreme Court determined in *Garcia II* that only the prima facie elements of the plaintiff[']s case are jurisdictional.").  However, KIPP urges us to go further and consider its argument on pretext because "the Supreme Court did not expressly hold that the pretext analysis is *not* jurisdictional."  (Emphasis added.)  Essentially, KIPP asks us to place an additional burden on Whitehead beyond the establishment of her prima facie case.  It asks us to require her to "rebut" KIPP's reasons for terminating her employment and prove pretext in order to establish that the trial court had subject-matter jurisdiction over her claims.

KIPP's interlocutory appeal, however, is limited to those issues properly raised in its plea to the jurisdiction.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (Vernon Supp. 2013).  The purpose of a plea to the jurisdiction is to defeat an action "without regard to whether the claims asserted have merit." *Bland v. Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).  And the Supreme Court has specifically held that in an appellate review of a trial court's grant or denial of a jurisdictional plea, we review evidence only when necessary to resolve any dispute over jurisdictional facts. *Miranda*, 133 S.W.3d at 226.

Accordingly, we only reach the merits of a plaintiff's claims to the extent necessary to resolve the dispute over jurisdictional facts, identified by the Supreme Court as the elements of a prima facie case of employment discrimination. *See Williams*, 2013 WL 4779693, at *3 n.4 ("Because our review of this interlocutory appeal is limited to the trial court's determination of its own subject-matter jurisdiction, we do not consider any matters beyond whether Williams presented a prima facie case of discrimination or retaliation.").  By asking us to consider its pretext arguments, KIPP is asking us to consider facts and evidence beyond Whitehead's "minimal" burden of establishing her prima facie Chapter 21 employment-discrimination claims. *See State v. Lueck*, 290 S.W.3d 876, 881–84 (Tex. 2009).  Under the appropriate standard of review applied to a jurisdictional plea, we may not do so.

23

Accordingly, we overrule KIPP's fifth issue.

## Conclusion

We affirm the order of the trial court denying KIPP's plea to the jurisdiction.


Terry Jennings
Justice

Panel consists of Justices Jennings, Higley, and Sharp.